**RESOLUTION TRUST CORP., Plaintiff,**

**v.**

**S & K CHEVROLET, et al., Defendants.**

**No. 93–1308.**

United States District Court,
C.D. Illinois,
Peoria.

Nov. 8, 1994.

Carole A. Corns, William A. Spence, Freeborn & Peters, Chicago, IL, Benita Seliga, Resolution Trust Corp., Overland Park, KS, for Resolution Trust Corp.

Michael W. Heller, Sandra J. Birdsall, The Leiter Group, Peoria, IL, Michael Mahoney, Michael T. Mahoney, Ltd., Chillicothe, IL, Daniel L. Johns, Kevin L. Elder, Westervelt Johnson Nicoll & Keller, Kevin F. Sullivan, Peoria, IL, J. Gregory Scott, Heavner Handegan & Scott, Decatur, IL, for defendants.

Al Heth, pro se.

Al Hunt, pro se.

## ORDER

McDADE, District Judge.

Before the Court is a Report and Recommendation of United States Magistrate Judge Robert J. Kauffman [Doc. # 72]. In his Report and Recommendation, the Magistrate Judge addresses several Motions to Dismiss (Docs. # 34, # 43, # 46, # 51, # 57, # 59, # 62, and # 65). The Magistrate Judge recommends that Motions to Dismiss be denied as to Count One and that the

Motions to Dismiss be allowed as to Count Two. Plaintiff, the Resolution Trust Corporation ("the RTC"), has filed an objection pertaining to Count Two. Defendants S & K Chevrolet, Angevine, Alex, Durdle, W. Kallister, K. Kallister, Smith, Sr., Smith, Jr., and Stewart, ("S & K"), have filed an objection only to the all encompassing statute of limitations portion of the recommendation. Defendant Escamilla has filed an objection pertaining to those portions of the recommendation addressing statutes of limitations, standing, and Count One. Defendant Reiman has filed an objection to those portions of the recommendation addressing standing, statutes of limitations, and Count One. Accordingly, the Court shall, pursuant to 28 U.S.C. § 636(b)(1)(C), make a *de novo* review of those portions of the Magistrate Judge's recommendation to which objections have been filed.

Initially, the Court notes that a complaint should not be dismissed unless it appears from the pleadings that the plaintiff could prove no set of facts in support of its claim which would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In addition, for purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff and its factual allegations are taken as true. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Finally, a complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain a recovery under some viable legal theory. *Sutliff, Inc. v. Donovan Cos.*, 727 F.2d 648 (7th Cir.1984).

This case arises from an alleged scheme by Defendants to, through the use of misrepresentations and false dealings, secure financing from Security Savings and Loan Association ("Security") for persons who sought to purchase automobiles from S & K Chevrolet. Defendant S & K is a corporation which is in the business of selling new and used automobiles. With the exception of Defendant Reiman, all Defendants were either in the employ of S & K as salesmen, sales managers, and finance managers, or were owners of S & K. Defendant Reiman was an insurance agent for a national insurance company. S & K and Security had an agreement whereby S & K would submit loan applications to Security on behalf of potential S & K customers. Security would lend money to S & K customers if the customer met Security's lending criteria.

The alleged scheme perpetrated by Defendants involved, *inter alia*, the falsification of information on loan applications submitted to Security, misrepresentations concerning the existence and amount of down payments, misrepresentations concerning accessories on automobiles sold, misrepresentations as to the insurability of purchasers, and misrepresentations concerning the value of trade-ins and the purchase price of an automobile. This alleged scheme was carried out from August 1987 through June 1988. For the purposes of Count II, Plaintiff's RICO claim, the prohibited activities under 18 U.S.C. § 1962 are alleged to have continued from 1987 through at least 1990. Over 50% of the loans made by Security to S & K customers during this time period became delinquent, causing a substantial loss to Security. On August 17, 1989, the Office of Thrift Supervision ("the OTS") placed Security in receivership and appointed the RTC as receiver. The OTS simultaneously created a new institution, Security Federal Savings and Loan Association ("Security Federal"), to acquire certain assets and liabilities of Security, including third party claims of the type asserted in the present case. On August 17, 1990, the OTS appointed the RTC as receiver of Security Federal. It is in the capacity of receiver of Security Federal that the RTC brought the present suit on August 6, 1993.

The RTC's Complaint is in two counts. Count One asserts a claim for common law fraud. Count Two asserts a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. § 1962(a)–(d). Several Defendants filed Motions to Dismiss the RTC's Complaint. These motions challenged the Complaint on the basis of standing, statutes of limitations, and pleading inadequacies in both Counts One and Two. The Magistrate Judge found that the RTC has standing to pursue both claims, that the RTC's claims are not time barred, that Count One sufficiently pleads common law fraud,

and that Count Two fails to allege sufficiently a "racketeering activity" and a "pattern." As noted above, both the RTC and various Defendants have filed objections to the Magistrate Judge's recommendation. The Court, therefore, shall consider *seriatim* the issues of standing, statutory time bars, and adequacy of the pleadings in Counts One and Two.

## STANDING

The Magistrate Judge found in his Report and Recommendation that the RTC had standing to bring the present suit. In their Motions to Dismiss, Defendants argued that the RTC lacked standing because both its fraud and RICO claims are not assignable. Citing *Freeman Coal Corp. v. Burton*, 388 Ill. 604, 58 N.E.2d 589 (1944), the Magistrate Judge stated that, under Illinois law, an action for fraud transferred by the operation of law may be prosecuted. The Magistrate Judge, citing 12 U.S.C. § 1821(d)(2)(A), noted that the RTC had taken control of its fraud claim by operation of law. As such, the Magistrate Judge found that the RTC's fraud claims were assignable. The Magistrate Judge also found that the RTC's RICO claims were assignable. The Magistrate Judge noted that all federal cases which have considered the matter have found RICO claims to be assignable, and stated that he found the reasoning those cases employed persuasive. Accordingly, the Magistrate Judge found that the RTC had standing to pursue its fraud and RICO claims.

Defendant Reiman filed an objection to the Magistrate Judge's recommendation regarding the issue of standing.[1] Reiman argues in his objection that the RTC did not take control of the assets of Security by operation of law, rather, it took control of Security Federal's assets by the operation of law. In

turn, Reiman argues, Security Federal acquired the assets of Security through assignment. Therefore, Reiman reasons, the Court must determine the issue of standing on the basis of contractual assignment, not transfer by operation of law. Reiman continues that the RTC's cause of action for fraud is not assignable under Illinois law, and that the RTC's RICO claims are, similarly, not assignable.[2] The Court finds Reiman's arguments unpersuasive and that the Magistrate Judge's recommendation concerning the issue of standing should be adopted.

▆▆ The RTC has standing to pursue its claims under both common law fraud and RICO. As the Magistrate Judge indicated in his recommendation, the Supreme Court of Illinois has, since *Freeman Coal Corp. v. Burton*, 388 Ill. 604, 58 N.E.2d 589 (1944), recognized that an action in fraud transferred by operation of law may be prosecuted. Contrary to Reiman's argument, it is clear that transfer of assets from Security to Security Federal and from Security Federal to the RTC were accomplished by operation of law. *See* 12 U.S.C. § 1821; *cf. Federal Deposit Ins. Corp. v. Shrader & York*, 991 F.2d 216 (5th Cir.1993) (FDIC found to have standing to bring malpractice suit). Security Federal was created by the OTS to receive the assets of Security. Subsequently, Security Federal was placed in receivership by the OTS, and the RTC was appointed receiver of Security Federal. Accordingly, the RTC has standing to pursue its state law fraud claim.

The RTC also has standing to pursue its RICO claim. Reiman attacks the Magistrate Judge's recommendation as to the assignability of a RICO claim by arguing that the Seventh Circuit would, if it were to confront

---

1. Defendant Escamilla joins Defendant Reiman's objection.

2. The RTC filed a Motion to Strike [Doc. # 77] seeking to strike certain arguments from Reiman's objection. The Court finds that the RTC's motion should be granted as to the second and fourth issues, as delineated by Reiman, which are located on pages 4–5 and page 7 of his objection, respectively. The Court finds that these issues were not presented with sufficient particularity and clarity to allow the Magistrate Judge to review them. *Border v. Secretary of*

*Health and Human Services*, 836 F.2d 4 (5th Cir.1987); *Schaap v. Executive Indus., Inc.*, 760 F.Supp. 725 (N.D.Ill.1991); *Singh v. Superintending School Committee*, 593 F.Supp. 1315 (D.Me.1984). "Judges are not like pigs, hunting for truffles buried in briefs" *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991). The Court finds that Reiman did present the third issue presented on pages 5–7 of his objection with sufficient particularity, and, therefore, the RTC's motion is denied as to this issue.

this issue, decide against the assignability of RICO claims. In support of his argument, Reiman cites *Smith v. No. 2 Galesburg Crown Finance Corp.,* 615 F.2d 407 (7th Cir.1980) and *Tellis v. United States Fidelity & Guaranty Co.,* 805 F.2d 741 (7th Cir.1986). Reiman cites *Smith* for the general rule that actions for penalties do not survive the death of a plaintiff. In *Smith,* a case involving the Truth in Lending Act ("TILA"), a Seventh Circuit panel engaged in an analysis of whether TILA was penal or remedial when determining the survivability of a TILA claim. Reiman reasons that since *Tellis* found that a RICO action is penal in nature rather than remedial and based its decision as to survivability on that finding, the Seventh Circuit would likewise find against assignability of a RICO claim because it is penal in nature. The Court finds Reiman's argument to be without merit.

Initially, the Court notes a short-coming in Reiman's argument. Reiman cites *Tellis,* 805 F.2d 741 (7th Cir.1986) for the proposition that RICO is penal in nature. Reiman fails to bring to the Court's attention, however, the fact that this case has been vacated and remanded. 483 U.S. 1015, 107 S.Ct. 3255, 97 L.Ed.2d 755 (1987).[3] In addition, the Court notes that the Supreme Court in *Shearson/American Express, Inc. v. McMahon* found the legislative history of RICO indicates that the treble damages provision in § 1964(c) serves the dual purposes of compensation and deterrence. 482 U.S. 220, 240–41, 107 S.Ct. 2332, 2344–45, 96 L.Ed.2d 185 (1987). An analysis focusing upon whether RICO is remedial or penal is, however, unnecessary because the Court rejects the use of a penal/remedial dichotomy when determining whether RICO claims are assignable.

■■■ Lower federal courts which have addressed the issue of the assignability of RICO claims have universally found that they are assignable. *See Nicolls Pointing Coulson, Ltd. v. Transp. Underwriters of La.,* 777 F.Supp. 493 (E.D.La.1991); *Federal Ins. Co. v. Parello,* 767 F.Supp. 157 (N.D.Ill. 1991); *Federal Ins. Co. v. Ayers,* 760 F.Supp. 1118 (E.D.Pa.1990); *In re Nat'l Mortgage Equity Corp. Mortgage Pool Certificate Sec. Litigation,* 636 F.Supp. 1138 (C.D.Cal.1986). These courts have rejected the use of a remedial/penal analysis in deciding the assignability of RICO claims. Instead, these courts analogized RICO to the Clayton Act and found that since RICO is closely associated with the Clayton Act and claims under the Clayton Antitrust Act are assignable, claims under RICO should also be assignable. *Id.* The Court adopts the reasoning employed by these courts, and, therefore, finds that RICO claims may be assigned. Accordingly, Plaintiff has standing to pursue both its fraud claim based upon state law and its claim under RICO.

## STATUTES OF LIMITATION

The Magistrate Judge held in his Report and Recommendation that Plaintiff had timely filed its common law fraud and RICO claims. The Magistrate Judge found that the statutes of limitations for Plaintiff's fraud and RICO claims were five and four years, respectively. This finding is not objected to by any of the parties. The Magistrate Judge also found that pursuant to 12 U.S.C. § 1821(d)(14), Plaintiff's claims began to run anew on the date the RTC was appointed receiver of Security, August 17, 1989, that the fraud and RICO claims were viable on that date, that Plaintiff had five and four years from that date to file its fraud and RICO claims, respectively, and that the Complaint in this case was filed August 6, 1993, well within these respective periods. The Magistrate Judge therefore found that Plaintiff's claims were not time barred.

Defendants S & K and Reiman object to the Magistrate Judge's recommendation concerning the statutes of limitation.[4] Reiman objects to the Magistrate Judge's recommendation on the basis that the only statute of limitations period which accrues and begins

---

**3.** The Court strongly disapproves of this type of carelessness by Reiman's attorney. Such work is not in keeping with the level of professionalism this Court demands.

**4.** Defendant Escamilla also objects and claims to adopt the same arguments of Defendants S & K and Reiman.

to run upon the appointment of a receiver under § 1821(d)(14)(A) and (B) is the statutory three year period provided therein. Reiman argues the state statute of limitations period accrues at the time it would otherwise accrue under state law, and that § 1821(d)(14) does not cause this period to run anew upon the appointment of a receiver. S & K objects to the Magistrate Judge's recommendation on the basis that it was incorrectly premised upon the unstated assumption that RICO is a tort claim and, therefore, subject to the provisions of § 1821(d)(14). In addition, S & K argues that, even if RICO is a tort, the extension of the statutory period of limitations should be three years.

Initially, the Court notes that neither the Magistrate Judge nor the parties considered § 1821(d)(14) in its entirety. Specifically, the Magistrate Judge's recommendation failed to consider the language of § 1821(d)(14)(A)(ii) which, as amended in 1993, refers to 12 U.S.C. § 1441a(b)(14). *See,* 1994 Cumulative Annual Pocket Part of Title 12 Banks and Banking §§ 1751–2280, p. 92. In pertinent part, amended § 1821(b)(14)(A) and (B) state:

**(A) In general**

Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be—

. . . . .

(ii) in the case of any tort claim (other than a claim which is subject to section 1441a(b)(14) of this title), the longer of—

(I) the 3–year period beginning on the date the claim accrues; or

(II) the period applicable under State law.

**(B) Determination of the date on which a claim accrues**

For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of—

(i) the date of the appointment of the Corporation as conservator or receiver; or

(ii) the date on which the cause of action accrues.

In turn, 12 U.S.C. § 1441a(b)(14)(A)(i) applies to tort claims for which the applicable statute of limitations under § 1821(d)(14)(A)(ii) expired before December 17, 1993, and extends the statute of limitations to five years from the date the claim accrued or the period applicable under State law, whichever is longer. A "tort claim" as defined in § 1441a(b)(14)(A)(ii) refers to, *inter alia,* a claim arising from fraud or intentional misconduct resulting in substantial loss to the institution. With the correct statutory sections in hand, the Court shall address the objections to the Magistrate Judge's recommendation *seriatim.*

Defendant Reiman argues that a reasonable reading of § 1821(d)(14) indicates that the only statute of limitations period which accrues or begins to run on the date of receivership is the three year period set forth in subpart (A)(ii)(I). Reiman continues that the applicable state statute of limitations period contained in subpart (A)(ii)(II) does not re-accrue or begin to run anew at the time of appointment, but rather, at the time it would otherwise accrue under state law. Reiman objects only to the portion of the Magistrate Judge's recommendation which addresses the period of limitations applicable to Count One of the Complaint. Count One asserts a state law fraud claim. The Court finds that Reiman's argument is without merit for at least three reasons.

First, the plain wording of subpart (B) indicates that the accrual date for any claim shall be the later of the date of appointment or the date on which the cause of action accrues. Subpart (B) makes no differentiation between the limitations periods contained in (A)(ii)(I) and (II). As such, the plain wording of the statute indicates that the accrual dates put forth in (B)(i) and (ii) apply to both (A)(ii)(I) and (II) equally. Second, courts which have addressed the issue have found that (B)(i) and (ii) apply to (A)(ii)(I) and (II) equally. *See FDIC v. McSweeney,* 976 F.2d 532, 534 (9th Cir.1992); *RTC v. Krantz,* 757 F.Supp. 915, 920 (N.D.Ill. 1991). Third, the Court's interpretation of

subparts (A) and (B) comports with legislative intent. In the legislative record, Senator Donald Riegle, Chairman of the House–Senate Conference Committee on FIRREA, stated that the statute sought "to maximize potential recoveries by the Federal Government by preserving to the greatest extent permissible by law claims that otherwise would have been lost due to the expiration of hitherto applicable limitations periods." 135 Cong.Rec. § 10205 (daily ed. Aug. 4, 1989). Accordingly, the Court finds that Reiman's argument is without merit and that Plaintiff's common law fraud claim was timely filed.[5]

Defendant S & K argues that the Magistrate Judge erroneously applied § 1821(d)(14)(A) to the RICO claim contained in Count Two of the Complaint. S & K argues that RICO is not a tort, and states that "[t]he Seventh Circuit has found that RICO is an action for statutory penalty, *Tellis vs. U.S.F. & G.*, 805 F.2d 741 [sic]." S & K concludes that there is no provision in FIRREA or RICO for an extension of Plaintiff's statutory claim. In the alternative, S & K, citing *RTC v. Krantz*, argues, as did Reiman, that only the three year period in subpart (A)(ii)(I) applies to extend the limitations period from the date of receivership. The Court shall first address Defendant's alternative argument. Assuming the applicability of § 1821(d)(14) to Plaintiff's RICO claim, the Court finds that S & K's alternative argument is without merit for several reasons. First, the case cited by S & K for support of its argument, *Krantz*, actually supports the contrary view. In *Krantz*, the court stated that:

... the statute of limitations for actions brought by the 'Corporation' in this case would be three years for the tort-based claims and six years for the contract-based claims **because each period is longer than the applicable one year contractual** limitations period. 12 U.S.C. § 1821(d)(14)(A)(i) and (ii).

757 F.Supp. at 920. Second, S & K's argument fails for all the reasons that Reiman's argument failed when asserting that only the period of limitations contained in subpart (A)(ii)(I) applied to Plaintiff's claim for state law fraud. Accordingly, S & K's alternative argument is without merit.

The Court now turns to S & K's main argument that RICO is not a tort, and, therefore, not subject to provisions of § 1821(d)(14). Initially, the Court notes that in citing *Tellis*, S & K's attorney, not only employs an improper citation format, but, more importantly, cites a case that has been vacated and remanded. 483 U.S. 1015, 107 S.Ct. 3255, 97 L.Ed.2d 755 (1987).[6] The Court also notes, however, that S & K raises what appears to be an issue of first impression. The Court's research has not revealed a case where § 1821(d)(14) was used to extend the limitation period for a RICO claim. The Magistrate Judge merely assumed without comment that § 1821(d)(14) applied to a RICO claim. The Court, however, need not resolve this issue because, as laid out in detail later in this Order, Plaintiff fails to sufficiently plead its RICO claim. *See infra* pp. 1061–1063. Accordingly, the question of whether § 1821(d)(14) extends the period of limitations for a RICO claim need not and shall not be addressed by the Court. Plaintiff has failed to sufficiently plead a RICO claim thereby mooting the question of timely filing.

### COUNT ONE: COMMON LAW FRAUD

The Magistrate Judge in his Report and Recommendation found that the Complaint amply pleads fraud under Rule 9(b) of the Federal Rules of Civil Procedure. In support of his finding, the Magistrate Judge cites *Vicom v. Harbridge Merchant Serv., Inc.*, 20 F.3d 771 (7th Cir.1994), and states

---

**5.** The Court notes that even if Reiman were correct that only the limitations period in (A)(ii)(I) accrued at the time of receivership, § 1441a(b)(14)(A) and (C) extends the period under (A)(ii)(I) to five years. Plaintiff was appointed receiver on August 17, 1989, and filed this suit on August 6, 1993. As such, that portion of the Complaint alleging state law fraud was timely filed even if the period put forth in (A)(ii)(I) was

the only limitations period to accrue upon Security being placed into receivership.

**6.** As the Court stated in discussing Reiman's attorney's similar shortcoming, such carelessness by S & K's attorney is not in keeping with the level of professionalism this Court demands.

that the Plaintiff sufficiently pled the "who, what, when, where, and how" of the alleged fraud. Defendant Reiman objects to the Magistrate Judge's recommendation by arguing that he did nothing that could be construed as fraudulent, that Plaintiff failed to show a meeting of the minds as to a conspiracy, and that Plaintiff failed to allege that Reiman's acts proximately caused it any injury. Defendant Escamilla also objects to the Magistrate Judge's recommendation. Escamilla argues that Plaintiff failed to allege that Escamilla's acts proximately caused it any injury, and that Plaintiff made no allegation of fact that would support a conspiracy theory. Both Reiman and Escamilla cite a single case in support of their argument, *Goldschmidt v. Patchett,* 686 F.2d 582 (7th Cir.1982). The Court shall consider each Defendant's claims *seriatim.*

█ The Court shall first consider the argument put forth by Reiman that he did nothing that could be considered intrinsically fraudulent or that could be characterized as constituting a misrepresentation. The Court finds that the allegations made in the Complaint regarding the alleged conduct of Reiman do constitute acts of fraud and misrepresentation. The Complaint alleges that Reiman knowingly misrepresented the insurability of certain loan applicants with the intent that Security would rely upon his misrepresentations and approve loans to unqualified applicants. The Complaint also alleges that Reiman would issue insurance binders to loan applicants knowing that because of their finances or driving record, they were uninsurable, would wait until after Security made a loan based in part on the belief that a loan applicant was insurable, and would then cancel the policies. The Court finds that these allegations describe fraudulent conduct and constitute misrepresentations.

Reiman next argues that Plaintiff has failed to allege facts sufficient to support a claim of conspiracy. Reiman argues that Plaintiff has failed to allege facts which would demonstrate that there was a "meeting of the minds" as to any conspiracy and that Plaintiff only alleges the mere conclusion that a conspiracy exists. Escamilla also objects on the basis of the insufficiency of

any alleged conspiracy, but merely makes a blanket assertion that no facts exist to support a conspiracy theory. Plaintiff, in its opposition to Defendants' Motions to Dismiss, states that it has not and that it is not required to plead conspiracy. Plaintiff, citing *Cenco, Inc. v. Seidman & Seidman,* 686 F.2d 449 (7th Cir.1982), argues that there is no such thing as a conspiracy to commit a tort and that its allegations that Reiman and Escamilla participated in the alleged fraud are sufficient. Upon reviewing Plaintiff's Complaint, the Court finds that Plaintiff has sufficiently alleged a cause of action under common law fraud which encompasses both Reiman and Escamilla.

█ The Court first addresses Plaintiff's citation to *Cenco, Inc.* for support of its assertion that there is no action for conspiracy to commit a fraud. As Chief Judge Posner, the author of *Cenco, Inc.,* stated in *Lloyd v. Loeffler,* the discussion in *Cenco, Inc.,* regarding conspiracy's place in tort jurisprudence is irrelevant where the conspiracy achieves its objective. 694 F.2d 489, 497 (7th Cir.1982). The object of the alleged fraud was achieved in this case. Therefore, the purpose of the conspiracy concept in a case such as the one before the Court is to identify the tort-feasors, not to stand as a separate claim in addition to a claim for common law fraud. *Lloyd,* 694 F.2d at 497. In a case such as the present which involves several actors working together to achieve a fraudulent objective, a claim of common law fraud subsumes the claim of conspiracy to commit fraud, assuming of course that the latter is a recognized claim under tort law. *Cf. Cenco, Inc.,* 686 F.2d at 452–53 (Dismissal of conspiracy count was at most harmless error because in allowing the jury to consider fraud count, the trial judge necessarily allowed jury to consider whether defendant had participated in a conspiracy to defraud). Requiring a plaintiff to allege conspiracy as a separate claim would be improper and redundant since a conspiracy to defraud is, in a case such as this, part and parcel of the plaintiff's claim of common law fraud. *See Lloyd,* 694 F.2d at 497; *Cenco, Inc.,* 686 F.2d at 453. *But see Terrell v. Childers,* 836 F.Supp. 468, 475 (N.D.Ill.1993); *Carl v. Ga-*

*luska,* 785 F.Supp. 1283, 1287–89 (entertaining claims for both common law fraud and conspiracy to commit fraud). Accordingly, although a free standing claim of conspiracy to defraud would be improper in this case, the concept of conspiracy is intertwined in Plaintiff's common law fraud claim and serves to identify the tortfeasors in its case.

Turning to Defendants' argument that the Complaint does not allege facts necessary to support a theory of conspiracy, the Court finds that Defendants' argument has no merit. Conspiracy is not the essence of Plaintiff's claim, and Plaintiff need not formally plead conspiracy. Rather, Plaintiff has claimed common law fraud and, as such, need only allege facts which show that Defendants knowingly participated in the scheme to defraud Security. *Renovitch v. Kaufman,* 905 F.2d 1040, 1049 n. 11 (7th Cir.1990); *Scholes v. Stone, McGuire and Benjamin,* 786 F.Supp. 1385, 1395 (N.D.Ill.1992); *Shacket v. Philko Aviation, Inc.,* 590 F.Supp. 664, 668 (N.D.Ill.1984). The Complaint alleges that both Reiman and Escamilla knowingly participated in the scheme to defraud Security. As to Reiman, the Complaint alleges that he, in concert with and in furtherance of the scheme to defraud Security, knowingly issued insurance binders to S & K loan applicants for the purpose of inducing Security to make loans to S & K's customers. As to Escamilla, the Complaint alleges that he, in concert with other members of the S & K organization and in furtherance of the scheme to defraud Security, made a number of misrepresentations regarding the value of trade-ins and automobiles purchased. As such, Plaintiff has sufficiently alleged a claim for common law fraud which encompasses both Reiman and Escamilla. Accordingly, Defendants' arguments are without merit.

Finally, Reiman and Escamilla argue that Plaintiff failed to sufficiently allege that their acts proximately caused its injury. This argument was not addressed by the Magistrate Judge which, regrettably, diminishes the benefit of his Report and Recommendation. Nevertheless, the Court has taken upon itself to decide the issue. Reiman argues that since there are no allegations that Security suffered any monetary losses as a result of a failure of insurance coverage on any vehicle used as collateral for a loan, the conduct of Reiman did not proximately cause Security's loss. Escamilla merely makes the bald assertion that no allegations of fact establish that his conduct proximately caused Security's loss. The question of proximate cause under Illinois law is usually one of fact to be determined by a jury. *Merlo v. Public Serv. Co. of N. Illinois,* 381 Ill. 300, 318, 45 N.E.2d 665, 675 (1942); *Sokolowski v. All Points Distrib. Serv., Inc.,* 243 Ill.App.3d 539, 183 Ill.Dec. 822, 825, 612 N.E.2d 79, 82 (1993). It can only be a question of law when "the facts are not only undisputed, but are also such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them." *Merlo,* 381 Ill. at 318, 45 N.E.2d at 675. If reasonable men could draw different inferences from facts which are undisputed, an issue of fact exists which would preclude summary judgment. *Smith v. Armor Plus Co., Inc.,* 248 Ill.App.3d 831, 187 Ill.Dec. 625, 631, 617 N.E.2d 1346, 1352 (1993).

The Court finds that the Complaint alleges facts which are, at least, sufficient to require the issue of proximate cause to be decided by a jury. The Complaint alleges that the existence of insurance was one of Security's lending criteria, that Reiman knew of this criteria, that Reiman participated in the scheme devised by S & K to induce Security to loan money to S & K customers who were not credit worthy by misrepresenting the insurability of such customers, that no loan would have been made if Reiman had not issued an insurance binder, and that as a result of the concerted action of Reiman and other Defendants, Security suffered pecuniary injuries. Regarding Escamilla, the Complaint alleges that he misrepresented the values of trade-ins and vehicles purchased, that he misrepresented the existence of down payments, that Security relied upon his misrepresentations, that Security was induced by Escamilla's misrepresentations to loan money to non-credit-worthy borrowers, and that as a result of these loans, Security suffered pecuniary injuries in the form of defaulted loans. The Court finds

that the allegations of the Complaint are not so deficient that it could find as a matter of law that proximate cause is lacking as to Reiman and Escamilla. Rather, the Court finds that proximate cause is a question which must be left for the jury to decide. Accordingly, the Court finds that Defendants' arguments regarding proximate cause are without merit and that their Motions to Dismiss in this regard must be denied.

### COUNT II: RICO

The Magistrate Judge found in his Report and Recommendation that Count II of Plaintiff's Complaint which contains claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68 ("RICO"), should be dismissed for two reasons. First, the Magistrate Judge found that the predicate acts upon which Plaintiff based its RICO claim, instances of bank fraud under 18 U.S.C. § 1344, did not become predicate acts for the purposes of RICO until 1989, that the inclusion of bank fraud as a predicate act under RICO should not be applied retroactively, and that as a result, Plaintiff failed to allege "racketeering activity" under RICO. Second, the Magistrate Judge found that, even if the statute applied retroactively, the Complaint fails to adequately allege "pattern." Plaintiff objects to both of the Magistrate Judge's findings.

■■■■ Two essential elements of claims brought under 18 U.S.C. § 1962(a)–(d) are 1) a pattern; 2) of racketeering activity. *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir.1992). A pattern of racketeering activity consists of a minimum of two predicate acts of racketeering committed within a ten year period. 18 U.S.C. § 1961(5). Predicate acts are acts for which a defendant can be indicted under 18 U.S.C. § 1961(1)(B). Bank fraud under 18 U.S.C. § 1344 was added as a RICO predicate act in 1989. As stated above, the Magistrate Judge found that Plaintiff failed to adequately allege both a cognizable predicate act and pattern. Plaintiff objects to these findings by arguing that the addition of bank fraud under § 1344 as a predicate act should be retroactively applied to cover Defendants' acts which occurred in 1987 and 1988 and that it

sufficiently alleged pattern. The Court notes that if it were to find that Plaintiff failed to adequately allege pattern, it would not be necessary to address the issue of the retroactivity of the 1989 amendment adding bank fraud to the list of predicate acts in § 1961(1)(B). Accordingly, the Court shall first address the issue of pattern.

■■■■ As stated above, § 1961(5) of RICO defines "pattern" as requiring, at a minimum, two acts of racketeering activity within a ten year period. Although at least two racketeering acts are necessary to make a pattern, such a nominal showing would rarely suffice following the Supreme Court's holding in *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). In *Northwestern Bell*, the Supreme Court held that in addition to showing a number of predicate acts, a plaintiff, to establish pattern, must show that the predicate acts are related and continuous. *Id.* at 236–43, 109 S.Ct. at 2899–2903. The "relationship" portion of this requirement entails a showing that the predicate acts were committed in a relatively close period of time, involved the same victim, and involved the same sort of misconduct. *Vicom, Inc. v. Harbridge Merchant Serv., Inc.*, 20 F.3d 771, 779 (7th Cir.1994); *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir.1986). The existence of "relationship" is not questioned in this case. "Continuity" is a concept which may be either closed- or open-ended, "referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Northwestern Bell*, 492 U.S. at 241, 109 S.Ct. at 2902. Regardless of whether closed- or open-ended continuity is at issue, continuity is "centrally a temporal concept." *Id.* at 242, 109 S.Ct. at 2902. The present case, as do the vast majority of cases addressing RICO pattern requirement, turns on whether Plaintiff has alleged a pattern of racketeering that satisfies the requirement of continuity. Therefore, the Court must determine whether Plaintiff's allegations satisfy the requirements of either closed-ended or open-ended continuity.

■■■■ Plaintiff, to show pattern in a closed-ended period, must show "a series of related

predicates extending over a substantial period of time." *Id.* "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term conduct." *Id.* The Seventh Circuit, in both pre- and post–*Northwestern Bell* cases, has utilized the factors laid out in *Morgan,* 804 F.2d at 975 to analyze allegations of pattern. *See Vicom,* 20 F.3d at 780; *Midwest Grinding Co., Inc.,* 976 F.2d at 1023; *Uni\*Quality, Inc. v. Infotronx, Inc.,* 974 F.2d 918, 922 (7th Cir.1992); *Olive Can Co., Inc. v. Martin,* 906 F.2d 1147, 1151 (7th Cir.1990). The *Morgan* factors are: the number and variety of predicate acts, the length of time over which the acts were committed, the number of victims, the presence of separate schemes, and the occurrence of distinct injuries. 804 F.2d at 975. Of the *Morgan* factors, duration is the single most important factor in closed-ended analysis. *Vicom,* 20 F.3d at 781. The Court, with these principles in hand, shall examine Plaintiff's allegations.

 Plaintiff alleges in its Complaint that the scheme involved in its RICO claim lasted only approximately ten months, from August of 1987 to June of 1988.[7] Several Seventh Circuit cases have found that time periods similar in duration to the present case did not satisfy the temporal aspect of closed-ended continuity. *See Vicom,* 20 F.3d at 780–81 (nine months); *Midwest Grinding Co., Inc.,* 976 F.2d at 1024 (nine months, and collecting cases); *Uni\*Quality, Inc.,* 974 F.2d at 922 (seven to eight months); *Olive Can Co., Inc.,* 906 F.2d at 1151 (approximately eight months). Accordingly, the Court finds that Plaintiff fails to allege facts sufficient to meet the temporal aspect of closed-ended continuity.

The Court, having found that Plaintiff has failed to meet the temporal aspect of continuity, shall next examine the remaining *Morgan* factors. First, Plaintiff alleges a large number of predicate acts, but not acts of great variety. Each basically involves pro-

viding inaccurate information to Security. Second, there is only one victim in this case, Security. Plaintiff argues that in addition to Security, Security's employees who lost their jobs upon Security being placed in receivership, Security's creditors and depositors, the bankrupt consumers, and the taxpaying public were also victims of Defendants' fraudulent acts. In a larger sense, acts such as those alleged in this case victimize all of humanity by eroding man's trust in his fellow man. However, it would, quite clearly, be an untenable stretch to include all mankind as victims of every fraudulent act. So to, Plaintiff's inclusion of the indirect victims of Defendants' alleged fraud. Third, the Court agrees with the Magistrate Judge that only one basic scheme was afoot: providing false information to Security via loan applications in order to secure loans and sell more automobiles. Finally, the Court finds that Plaintiff suffered only one type of injury, economic. *See Vicom,* 20 F.3d at 782; *Midwest Grinding Co., Inc.,* 976 F.2d at 1025. Accordingly, the Court finds that Plaintiff has not sufficiently alleged closed-ended continuity in its Complaint.

 Having found that Plaintiff has not alleged facts that support closed-ended continuity, the Court shall determine whether Plaintiff has established open-ended continuity. Open-ended continuity may be found to exist if: 1) "a specific threat of repetition" exists; 2) "the predicates are a regular way of conducting [an] ongoing legitimate business;" or 3) "the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes." *Northwestern Bell,* 492 U.S. at 242–43, 109 S.Ct. at 2902–03. *See also Vicom,* 20 F.3d at 782; *Midwest Grinding Co., Inc.,* 976 F.2d at 1023. The Court shall examine the record in the present case to determine if Plaintiff has alleged facts necessary to demonstrate open-ended continuity.

 A plaintiff who fails to establish close-ended continuity can still establish pattern under RICO by showing that although

---

7. Plaintiff alleges that the predicate acts which form the basis of its Complaint were committed during a ten month period which ended in June of 1988. The alleged scheme of concealment of

the underlying predicate acts does not extend the length of a closed-ended RICO scheme in this case. *Midwest Grinding Co., Inc.,* 976 F.2d at 1024.

short lived, the scheme showed clear signs of continuing into the future. *Midwest Grinding Co., Inc.*, 976 F.2d at 1023. Schemes which have a clear and terminable goal have a natural ending point and cannot be a basis for finding open-ended continuity. *See Vicom*, 20 F.3d at 782–83 (sale of equipment in order to inflate value of company in the eyes of a potential buyer had natural end point); *McDonald v. Schencker*, 18 F.3d 491 (7th Cir.1994) (attorney's representation of a client had a natural end point, the conclusion of litigation); *Uni\*Quality, Inc.*, 974 F.2d at 922 (completion of contract to create labor scheduling program was natural end point); *Thompson v. Paasche*, 950 F.2d 306, 311 (6th Cir.1991) (sale of oil bearing lots of land had a natural end point, the sale of all the lots); *Olive Can Co., Inc.*, 906 F.2d at 1151 (repayment of loan to one of the co-conspirators was a natural end point). To establish open-ended continuity by showing that the predicate acts are a regular way of conducting business, a plaintiff must show that the predicate acts themselves are a regular way of conducting business. *Vicom*, 20 F.3d at 783–84.

■ In its Complaint, Plaintiff alleges that Defendants devised a series of schemes to defraud Plaintiff and other financial institutions. Plaintiff also alleges in its Complaint that during the period of August, 1987 to June, 1988, approximately 250 loans processed by Defendants did not meet Plaintiff's lending criteria. Plaintiff argues in its opposition to Defendants' Motion to Dismiss and objections to the Magistrate Judge's Report and Recommendation that Defendants' scheme had no logical point of termination and would have continued if not discovered. Plaintiff also argues that the predicate acts which form the basis of Plaintiff's RICO claim are a regular way of conducting business for Defendant. The Court finds that based upon these allegations, Plaintiff has, at least for the purposes of Defendants' Motions to Dismiss, sufficiently pleaded open-ended continuity.

Unlike the schemes in *Vicom, McDonald, Uni\*Quality, Inc., Midwest Grinding Co., Inc., Olive Can Co., Inc.*, and *Paasche*, the scheme in the present case had no natural ending point. Defendants were capable of repeating their alleged schemes indefinitely into the future. Indeed, but for the financial difficulties experienced by Security which resulted in it being placed in receivership, Defendants may well have continued to repeat their alleged schemes when dealing with both Security and other lending institutions. In addition, as in *United States v. Busacca*, 936 F.2d 232 (6th Cir.1991), Defendants' continued control of and participation in the business threatened a continuation of the sort of criminal acts alleged in the Complaint. Finally, procuring financing for buyers of its automobiles is a regular way of conducting business for Defendants. Allegations of bank fraud to procure these loans would make the predicate offenses a regular way of conducting business. *Vicom*, 20 F.3d at 783–84; *Fleet Credit Corp. v. Sion*, 893 F.2d 441, 447–48 (1st Cir.1990); *Johnston v. Wilbourn*, 760 F.Supp. 578, 588 n. 13 (S.D.Miss.1991). Accordingly, Plaintiff has alleged facts necessary to establish a specific threat of repetition and that the predicates are a regular way of conducting Defendants' business. The Court finds that for the purposes of a motion to dismiss Plaintiff has sufficiently established open-ended continuity, and therefore, pattern. The Court, having found sufficient pattern, is constrained to consider whether Plaintiff's Complaint lacks the requisite allegations of racketeering activity.

■ The Magistrate Judge held in his Report and Recommendation that Plaintiff's Complaint failed to allege a "racketeering activity" under RICO. Specifically, the Magistrate Judge held that the 1989 amendments to RICO which added bank fraud as a predicate act should not be retroactively applied to Defendants' conduct which occurred prior to 1989, and therefore, Plaintiff's Complaint which alleges bank fraud as the racketeering activity should be dismissed. In so holding, the Magistrate first found that this issue was properly analyzed under the rubric of retroactivity analysis, rather than *ex post facto* analysis as argued by Defendants. In addition, the Magistrate Judge found that Congress did not expressly prescribe the proper reach of the 1989 amendments, that application of RICO to Defendants would not impair

rights they possessed when they acted, and that application of RICO to Defendants would increase their liability for past conduct by exposing them to treble damages. Adhering to the analysis utilized by the Supreme Court in *Landgraf v. USI Film Products,* — U.S. ——, ——, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994), the Magistrate Judge held that since Defendants' liability would be increased by the retroactive application of RICO and since clear congressional intent favoring application is absent, the amendments to RICO adding bank fraud as a predicate act should not be retroactively applied to Defendants.

Plaintiff objects to the Magistrate Judge's recommendation by arguing that the damages under RICO are not more onerous than those under common law fraud, and that Congress intended the retroactive application of bank fraud as a predicate act under civil RICO. Specifically, Plaintiff argues that the punitive damages applicable to actions for common law fraud are far more onerous than the treble damages associated with RICO. Plaintiff also argues that Congress intended the retroactive application of bank fraud as a predicate act under RICO. In support of its argument, Plaintiff cites the case of *Weiner v. Napoli,* 772 F.Supp. 109 (E.D.N.Y.1991) which held that the amendment of 18 U.S.C. § 1961(1)(B) to add bank fraud as a predicate act under RICO should have retroactive effect. The Court, upon reviewing the record and law applicable to this case, finds that Plaintiff's argument must be rejected and that the Magistrate Judge's recommendation should be adopted.

■■■■ The Supreme Court in *Landgraf* stated that a court's first task when addressing the application of a federal statute which was enacted after the occurrence of events pertinent to a suit is to "determine whether Congress has expressly prescribed the statute's reach." — U.S. at ——, 114 S.Ct. at 1505. When a statute contains no express prescription as to its reach, a court must determine whether the newly amended statute "would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* If a statute would operate retroactively, the traditional presumption is that the statute does not govern the past conduct unless there exists clear congressional intent favoring such an application. *Id.*

■■■■ The 1989 amendments to RICO which added bank fraud as a predicate offense occurred after the acts which Plaintiff claims constitute racketeering activity in Count Two. When amending § 1961(1)(B) in 1989 to add § 1344 bank fraud as a "racketeering activity," Congress made no express statement as to whether retroactive application of the amendment was intended in the context of civil RICO claims. In addition, no clear congressional intent which would indicate that Congress intended retrospective application is present in the legislative history surrounding the 1989 amendments. The Court, therefore, must determine if the amended § 1961 has retroactive effect. The Court finds that the amended § 1961 would neither impair rights Defendants possessed when they acted nor impose new duties upon Defendants. The Court, however, finds that amended § 1961 would increase the liability of Defendants for their past conduct.

■■■■ At the time Defendants engaged in the conduct now at issue, they were not subject to treble damages under civil RICO. Under RICO, treble damages are mandatorily assessed upon the finding of liability. 18 U.S.C. § 1964(c). Although punitive damages are available in conjunction with common law fraud, the award of punitive damages is discretionary. *Borcherding v. Anderson Remodeling Co., Inc.,* 253 Ill. App.3d 655, 662, 191 Ill.Dec. 699, 705, 624 N.E.2d 887, 893 (1993). Indeed, where treble damages are mandatory under civil RICO provisions, punitive damages are disfavored in the law. *Ciampi v. Ogden Chrysler Plymouth, Inc.,* 262 Ill.App.3d 94, 199 Ill.Dec. 609, 622–23, 634 N.E.2d 448, 461–62 (1994). In addition, the *mens rea* requirement associated with treble damages under RICO is less than that for an award of punitive damages. The *mens rea* requirements for the substantive claims of bank fraud and common law fraud are identical: knowing and intentional. *See United States v. Saks,* 964 F.2d 1514,

1518 (5th Cir.1992); *North American Financial Group, Ltd. v. S.M.R. Enterprises, Inc.,* 583 F.Supp. 691, 697 (N.D.Ill.1984). However, punitive damages are only awarded for conduct that is outrageous either because the defendant's motive was evil or his acts exhibited a reckless disregard toward the rights of others. *Ciampi,* 199 Ill.Dec. at 622, 634 N.E.2d at 461. Accordingly, far more people are subject to treble damages under RICO than are subject to punitive damages under common law fraud.

The Court also notes that the retroactive application of a treble damages provision raises serious constitutional questions under both the *Ex Post Facto* Clause, U.S. Const., art. I, § 9, cl. 3, and the Due Process Clause of the Fifth Amendment. *See Landgraf,* —— U.S. at ——, 114 S.Ct. at 1505–06; *Louis Vuitton S.A. v. Spencer Handbags Corp.,* 765 F.2d 966, 971–72 (2d Cir.1985). "Where a statute may be construed to have either retrospective or prospective effect, a court will choose to apply the statute prospectively if constitutional problems can thereby be avoided." *Louis Vuitton S.A.,* 765 F.2d at 971. In the present case, retroactively applying mandatory treble damages to a wider array of defendants for past conduct raises a constitutional issue which is not frivolous. Accordingly, the Court finds that the 1989 amendments to § 1961 adding bank fraud as a racketeering activity should be applied only prospectively in the context of a civil RICO claim.[8] Plaintiff, therefore, has failed to allege a "racketeering activity," and its civil RICO claim contained in Count Two must be dismissed.

### CONCLUSION

IT IS THEREFORE ORDERED that the Magistrate Judge's Report and Recommendation is **Adopted.** Defendants' Motions to Dismiss [Docs. # 34, # 43, # 46, # 51, # 57, # 59, # 62, and # 65] are **DENIED** as to Count I. Defendants shall answer Count I within twenty-one (21) days of the date of the service of this Order. Defendants' Motions

to Dismiss [Docs. # 34, # 43, # 46, # 51, # 57, # 59, # 62, and # 65] are **GRANTED** as to Count II. Count II is **Dismissed with prejudice.**

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike [Doc. # 77] is **GRANTED in part** and **DENIED in part.** Plaintiff's motion is granted as to the second and fourth issues and denied as to the third issue.

---

8. The Court, for two reasons, finds the reasoning in *Wiener v. Napoli,* 772 F.Supp. 109 (E.D.N.Y. 1991) unpersuasive. First, this case was decided prior to *Landgraf.* Second, the case lacks any discussion of the increase in liability experienced

by defendants as a result of retroactive application of the 1989 amendments, the lowered *mens rea* requirement in RICO, and the potential constitutional problems associated with retroactive application of the 1989 amendments.