Robert SASSOON and Saul Alan
Sassoon, Plaintiffs,

v.

ALTGELT, 777, INC., a/k/a Altgelt Capital, a/k/a Altgelt capital group an Illinois corporation, Multi–Structure Development, Inc., a Nevada corporation, Daniel A. Frisch, Henry C. Huth, Joseph J. Ransdell, William G. Sullivan, Angelo Cassaro, Defendants.

No. 91 C 4074.

United States District Court,
N.D. Illinois, E.D.

April 14, 1993.

William E. Borenstein, Richard L. Manning, Chicago, IL, for plaintiffs; Robert Sassoon Saul Alan Sassoon, Carmine Mascoli, Manfred Joast, Deborah DeDomenico, The Thomas DeDomenico Trust dated April 12, 1988, and Shepard Swift.

Jeffrey Bergman, D'Ancona & Pflaum, Chicago, IL, for defendants Joseph Ransdell, William G. Sullivan.

Richard Del Guidice, Gozdecki & Del Guidice, Chicago, IL, for defendants Corey A. Binger, Peter D. Caminiti, Anthony Iatarola.

George E. Becker, Chicago, IL, for defendant Angelo Cassaro, Multi-Structure Development, Inc.

Salvatore Miglore, Chicago, IL, for defendant Daniel A. Frisch.

### MEMORANDUM AND ORDER

LINDBERG, District Judge.

Defendant, Binger, Caminiti & Iatarola (BC & I), has moved for dismissal of the claims made against BC & I in plaintiffs' second amended complaint. This complaint is in six counts. Plaintiffs have withdrawn the claim in Count VI as to BC & I, and have stated that BC & I was inadvertently included in the claim made in Count IV. Therefore, the motion need only be addressed with respect to Counts I, II, III, and V of the second amended complaint.

In Count I of the second amended complaint, plaintiffs allege that BC & I violated Section 10(b) of the Securities Exchange Act of 1934. 15 U.S.C. § 78j(b); 17 CFR § 240.-10b-5. BC & I contends that this count should be dismissed because, *inter alia*, it is barred by the applicable statute of limitations.

The United States Supreme Court has stated:

> Litigation instituted pursuant to § 10(b) and Rule 10b-5 ... must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation.

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* — U.S. ——, ——, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991). With respect to the three-year period of repose it is therefore necessary to know when the alleged violation occurred.

Plaintiffs argue that:

> The "violation" of § 10(b) and Rule 10b-5 charged in the Complaint occurred, at the earliest, when the defendants refused to return the investors['] money, as they had promised, on or after March 15, 1989.

This, however, is based upon an incorrect view of what constitutes a Rule 10b-5 violation. Rule 10b-5 states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 CFR § 240.10b–5. Count I's allegations with respect to Rule 10b–5 are that defendants made misrepresentations and/or omissions in violation of the Rule. The refusal of defendants "to return the investors['] money, as they had promised" then was not the violation alleged; only the misrepresentations and/or omissions constituted the violation alleged. This view of what constitutes a Rule 10b–5 violation is supported by the Supreme Court's *Lampf* case, in which the court said:

As there is no dispute that the earliest of plaintiff-respondents complaints was filed more than three years after petitioner's alleged *misrepresentations,* plaintiff-respondents claims were untimely.

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, ——, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991) (emphasis added).

■ Among the allegations of the complaint are the following:

34. ... On or about March 15, 1989, the Sassoons [Robert and Saul] wire transferred $100,000 from London, England to Chicago, Illinois....

35. ... Deborah DeDomenico and Thomas DeDomenico ... invested on March 13, 1989....

36. ... [Shepard] Swift invested on February 28, 1989....

37. ... Carmine C. Mascoli ... invested sometime in February of 1989....

38. ... Manfred Joast ... invested $100,-000 in March of 1989.

Thus, it is apparent that the claims of plaintiffs Swift and Mascoli with respect to any 10(b) claim based upon BC & I's silence as to facts "in connection with the purchase or sale" of the limited partnerships are time-barred by the three year limitation. BC & I's silence after the "purchase or sale" could not possibly have caused the transaction; therefore, only BC & I's silence prior to the purchase or sale could even conceivably be actionable under 10(b). As the date of the "purchase or sale" with respect to plaintiffs Swift and Mascoli was more than three years prior to the date their claims against BC & I were brought, those plaintiffs can have no claim against BC & I under 10(b) that is not time barred.

As to the Sassoons, the DeDomenicos, and Joast, there is some possibility that claims premised on BC & I's silence not barred by the three year limitation period could be pled. Moreover, although not pled as it is required to be, there is also the possibility that those claims could be pled so as not to be barred by the one year limitation period. However, Count I as alleged does not provide the specificity with respect to what statements and/or omissions were made by BC & I nor the specificity with respect to the timing of those statements and/or omissions necessary to determine whether a 10(b) claim can be properly pled and whether that claim is time barred. In other words, the 10(b) claims of the Sassoons, the DeDomenicos, and Joast are not pled in compliance with Rule 9(b). FRCP 9(b). Count I will therefore be dismissed with respect to the claims against BC & I, with plaintiffs being granted leave to file a third amended complaint alleging the Count I claims of the Sassoons, the DeDomenicos and Joast, against BC & I with the requisite specificity if that can be done.

With respect to the claim against BC & I in Count II, plaintiffs argue:

BCI argues that, as a matter of law, they could not be liable under Section 12(2) because they are not a "Seller." If BCI's duties toward the plaintiffs were strictly limited to the ministerial acts of drafting and filing, the cases cited by defendants would apply. However, the allegations in the complaint, coupled with the elevated standards imposed on attorneys representing issuers in "all or none" offerings, take them beyond the role of mere scriveners engaged in ministerial acts. In effect, the

S.E.C. imposes duties on attorneys in such offerings which are beyond their traditional, discrete roles as legal representatives for an issuer, to a role as guarantor that the issuer meets his legal obligations to the buyers of the security. This places the attorney in the role as an agent of the seller vis a vie [sic] the buyer, and as such, he acts for the seller within the meaning of the Act.

That the SEC may impose duties on attorneys representing issuers in "all or none" offerings does not alter the requirements of Section 12(2) or the definitions applicable to that statute. Given the drift from the language of the statute evident in plaintiffs' argument, it is worth quoting what the statute in fact states.

■ The statute in question states that: Any person who—

. . .

(2) offers or sells a security . . ., by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,

shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

15 U.S.C.A. § 77 *l* (West 1981). Plaintiffs' contentions to the contrary notwithstanding, BC & I did not "offer[ ] or sell[ ] a security" nor did plaintiffs purchase a security from BC & I in the transactions alleged. 15 U.S.C.A. § 77 *l* (West 1981); *Ackerman v. Schwartz*, 947 F.2d 841, 844–45 (7th Cir.

1991). See also *Pinter v. Dahl*, 486 U.S. 622, 652, 108 S.Ct. 2063, 2080–81, 100 L.Ed.2d 658 (1988) ("Indeed, it [the substantial-factor test] might expose securities professionals, such as accountants and lawyers, whose involvement is only the performance of their professional services, to § 12(1) strict liability. The buyer does not, in any meaningful sense, 'purchas[e] the security from' such a person."). Therefore, the claim in Count II against BC & I will be dismissed.

Count III alleges a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO). Specifically:

Plaintiffs bring this Count III against [defendants] Frisch, Ransdell, Sullivan, Altgeld, Multi, Cassaro, and the Lawyers [BC & I] for violation of § 1962(c) of the RICO Act, 18 U.S.C. § 1962(c).

RICO provides, *inter alia:*

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). The Supreme Court, interpreting this provision, has said

Once we understand the word "conduct" to require some degree of direction and the word "participate" to require some part in that direction, the meaning of § 1962(c) comes into focus. In order to "participate, directly or indirectly, in the conduct of such enterprise's affairs," one must have some part in directing those affairs. Of course, the word "participate" makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required. The "operation or management" test expresses this requirement in a formulation that is easy to apply.

. . .

. . . [T]he legislative history confirms what we have already deduced from the

language of § 1962(c)—that one is not liable under that provision unless one has participated in the operation or management of the enterprise itself.

... [I]t is clear that Congress did not intend to extend RICO liability under § 1962(c) beyond those who participate in the operation or management of an enterprise through a pattern of racketeering activity.

... An enterprise is "operated" not just by upper management but also by lower-rung participants in the enterprise who are under the direction of upper management. An enterprise might also be "operated" or "managed" by others "associated with" the enterprise who exert control over it as, for example, by bribery. ...

In sum, we hold that "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs," § 1962(c), one must participate in the operation or management of the enterprise itself.

*Reves v. Ernst & Young,* — U.S. —, —, — – —, 113 S.Ct. 1163, 1170, 1172–73, 122 L.Ed.2d 525 (1993). The Supreme Court in *Reves* held that an accountant's preparation of financial statements and audit reports did not give rise to liability under § 1962(c), even though professional standards adopted by the accounting profession state that financial statements are management's responsibility. *Reves v. Ernst & Young,* — U.S. —, — – —, 113 S.Ct. 1163, 1173–74, 122 L.Ed.2d 525 (1993).

■ In the memorandum in opposition to the motion to dismiss, plaintiffs summarize the activities of defendant BC & I with respect to the alleged enterprise as follows:

BC & I drafted the Offering which contained the promise that investors['] funds would be returned to them if either of two contingencies were not met.  . . .

... BC & I drafted a letter [on February 16, 1989] to the General Partners advising them that "no separate bank account" or "escrow" account needed to be established. . . . BC & I sent the Offering to "Stewart Title on February 20, 1989, and continued to make filings through the mails with the states of Connecticut, Penn-sylvania, and Nevada respecting the unchanged Offering after February 16, 1989." . . .

... On April 12, 1989, BC & I drafted a letter purporting to extend the dates for meeting the contingencies that required the return of investors['] money.

In other words, defendant BC & I's conduct consisted of providing legal services to the general partners and to the limited partnership. This is not, under *Reves,* sufficient to support liability under § 1962(c). 18 U.S.C. § 1962(c). Count III will therefore be dismissed.

■ Finally, Count V sufficiently alleges common law fraud to survive defendant BC & I's motion to dismiss. It states the alleged fraud with sufficient specificity. Moreover, at least insofar as it alleges that plaintiffs would not have purchased the limited partnerships in the absence of the misrepresentations allegedly made by BC & I and that as a result of their purchase of those limited partnerships plaintiffs were damaged, Count V also sufficiently alleges causation. Count V accordingly will not be dismissed.

ORDERED: Defendant Binger, Caminiti & Iatarola's (BC & I) motion to dismiss plaintiffs' second amended complaint is granted in part and denied in part.

Plaintiffs have withdrawn their claim against BC & I under Count VI, and have stated that BC & I was inadvertently included in the claim under Count IV, which will therefore also be considered withdrawn.

The claims in against BC & I contained in Count I are dismissed, with plaintiffs being granted leave to file a third amended complaint alleging the Count I claims of the Sassoons, the DeDomenicos and Joast, against BC & I with the requisite specificity if that can be done.

The claims against BC & I contained in Counts II and III are dismissed.

The motion to dismiss is denied with respect to Count V.

The third amended complaint, if any, shall be filed on or before April 30, 1993.