**RESOLUTION TRUST CORPORATION, as Receiver for Security Federal Savings and Loan Association, Plaintiff,**

v.

**S & K CHEVROLET COMPANY; David Angevine, a/k/a David Alex; Duane Angevine; Cal Collins; Tony Constible; Ray Counts; Walt Durdle; Art Enturo, Jr.; Bernie Escamilla; Jim Haines; Al Heth; Al Hunt; William Kallister; Kevin Kallister, Matt Matthews; Gary Parkinson; Monty Raymond; Randy Reiman; Bob Rhines; Thomas Smith, Sr.; Dave Stanfel; Harold Stafford; and Dan Stewart, Defendants.**

No. 93–1308.

United States District Court,
C.D. Illinois,
Peoria Division.

Feb. 28, 1996.

Carole A. Corns, William A. Spence, Freeborn & Peters, Chicago, IL, for Resolution Trust Corporation.

Michael W. Heller, Peoria, IL, Thomas E. Leiter, Garrett K. Williams, The Leiter Group, Peoria, IL, for S & K Chevrolet Company, David Angivine, Walt Durdle, William Kallister, Kevin Kallister, Thomas Smith, Sr., Thomas Smith, Jr., and Dan Stewart.

Michael Mahoney, Michael T. Mahoney, Ltd., Chillicothe, IL, for Bernie Escamilla.

Al Heth, Dunlap, IL, Pro Se.

Al Hunt, Madisonville, TN, Pro Se.

Daniel L. Johns, Kevin L. Elder, Westervelt Johnson Nicoll & Keller, Peoria, IL, for Randy Reiman.

Kevin F. Sullivan, Peoria, IL, for Bob Rhines.

J. Gregory Scott, Heavner Handegan & Scott, Decatur, IL, for Dave Stanfel.

### ORDER

McDADE, District Judge.

Before the Court are the Objections of Defendant Randy Reiman to the Magistrate's Report and Recommendation [Doc. # 139]. The facts in this case are set forth in the Court's previous Order dated November 8, 1994, and will only be summarized here. On August 6, 1993, Plaintiff Resolution Trust Corporation ("RTC"), filed a two-count Complaint against various Defendants alleging common law fraud (Count I) and violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) (Count II).

According to the Complaint, Security Savings and Loan Association ("Security") was a federally chartered savings and loan association located in Peoria, Illinois. On August 17, 1989, the Office of Thrift Supervision ("OTS") placed Security into receivership and appointed RTC as receiver of Security. Simultaneously, the OTS created a new institution, Security Federal Savings and Loan Association ("Security Federal") to acquire all deposits and certain assets and liabilities of Security. On August 17, 1990, OTS appointed RTC as receiver of Security Federal. RTC filed the August 6, 1993, Complaint on behalf of Security Federal.

Defendant Randy Reiman ("Reiman") was an insurance agent for a national insurance company. Reiman was allegedly involved in a scheme to fraudulently secure financing

from Security for persons who sought to purchase automobiles from S & K Chevrolet. In an Order dated November 8, 1994, the Court denied Defendants' motion to dismiss Count I (common law fraud) but granted the motion to dismiss Count II (RICO). *Resolution Trust Corp. v. S & K Chevrolet, et al.,* 868 F.Supp. 1047 (C.D.Ill.1994). In dismissing Count II, the Court reasoned that bank fraud could not be retroactively applied as a predicate act under RICO. *Id.* at 1062–63. Thus, because the RICO claim relied solely upon bank fraud to establish a pattern of racketeering activity, the claim had to be dismissed. *Id.*

However, the Court also found that absent any concerns about retroactivity, Plaintiffs' bank fraud claims would have sufficiently established a "pattern" under the RICO statute by alleging "open-ended continuity." *Id.* at 1061. Apparently encouraged by this holding, Plaintiff filed a First Amended Complaint which asserted allegations of mail fraud in Count II to replace the bank fraud allegations as predicate acts under RICO. Defendant Reiman filed a motion to dismiss both counts of the First Amended Complaint [Doc. # 106]. Magistrate Judge Kauffman denied Defendant's motion to dismiss on the basis that he could find no new arguments that were not already presented and rejected by the Court in its previous Order of November 8, 1994.

Reiman filed objections from the Magistrate Judge's Report and Recommendation on the basis that the following five grounds had not been previously decided by this Court:

(1) Whether Plaintiff has standing to prosecute a cause of action for punitive damages under Illinois law;

(2) Whether Plaintiff has sufficiently alleged mail fraud as a pattern of racketeering activity.

(3) Whether Plaintiff has standing to prosecute a claim for violation of 18 U.S.C. § 1962(a) and § 1962(b) or for conspiracy

under § 1962(d) to violate § 1962(a) or § 1962(b);

(4) Whether Plaintiff has sufficiently alleged a violation of 18 U.S.C. § 1962(c); and

(5) Whether Plaintiff has sufficiently alleged a conspiracy under § 1962(d) to violate § 1962(a), (b) or (c).

Because the Court agrees with Reiman that it has not previously decided these issues,[1] it will now reach the merits of his objections.

## ANALYSIS

The Court shall make a *de novo* determination of those portions of the Report and Recommendation to which objection has been made. 28 U.S.C. § 636(b)(1)(C). In analyzing a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), the Court must take the well-pleaded allegations of the Complaint as true and draw all reasonable inferences in favor of the plaintiff. *Baxter Healthcare Corp. v. O.R. Concepts, Inc.,* 69 F.3d 785, 787 (7th Cir.1995). Such a motion will only be granted where it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Lashbrook v. Oerkfitz,* 65 F.3d 1339, 1343 (7th Cir.1995). A complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain a recovery under some viable legal theory. *Sutliff, Inc. v. Donovan Cos.,* 727 F.2d 648, 654 (7th Cir.1984). Moreover, Fed.R.Civ.P. 9(b) requires that "all averments of fraud ... shall be stated with particularity."

## COUNT I

In Count I, Plaintiff RTC has alleged common law fraud and requested both compensatory and punitive damages. Reiman argues that Plaintiff does not have standing to prosecute a cause of action for punitive damages under Illinois law. This argument is based on the notion that under Illinois law, punitive damages do not survive the death of the

---

1. Reiman also objects that "Plaintiff does not have standing to prosecute a cause of action for common law fraud under Illinois law." However, he admits that this issue has already been decided adversely to him in the Court's previous Order and asserts it only to preserve this issue for appeal.

claimant. By analogy, Reiman asserts that the dissolution of a corporation, such as Security or Security Federal, prevents RTC from requesting punitive damages on behalf of those now defunct corporations.

A preliminary question is whether a corporation can maintain any cause of action under Illinois law after it has been dissolved. The answer is that it can, but only to the extent that Illinois statutes allow it to do so. *See Chicago Title & Trust Co. v. Forty–One Thirty–Six Wilcox Bldg. Corp.*, 302 U.S. 120, 125, 58 S.Ct. 125, 127, 82 L.Ed. 147 (1937); *People v. Mazzone*, 74 Ill.2d 44, 23 Ill.Dec. 76, 79, 383 N.E.2d 947, 950 (1978). The applicable statute here is contained in Article 12 of the Illinois Business Corporation Act:

> The dissolution of a corporation ... shall not take away nor impair any civil remedy available to or against such corporation, its directors, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within five years after the date of such dissolution.

805 ILCS 5/12.80 (1993). Because RTC filed suit on August 6, 1993, this was within the five year limitations period for the dissolution of both Security and Security Federal and the fraud claim is viable.

This brings the Court to the crux of Defendant's argument: whether a punitive damages claim can survive the death of the claimant. The Illinois Supreme Court has held that it cannot, *Froud v. Celotex Corp.*, 98 Ill.2d 324, 74 Ill.Dec. 629, 634, 456 N.E.2d 131, 136 (1983); *Mattyasovszky v. West Towns Bus Co.*, 61 Ill.2d 31, 330 N.E.2d 509, 510 (1975), unless a statute or regulatory scheme expressly authorizes a punitive damages award. *National Bank of Bloomington v. Norfolk & Western Ry. Co.*, 73 Ill.2d 160, 23 Ill.Dec. 48, 383 N.E.2d 919 (1978) (Public Utilities Act). Courts have read the exception in *National Bank* very narrowly. *See, e.g., Duncavage v. Allen*, 147 Ill.App.3d 88, 100 Ill.Dec. 455, 463–64, 497 N.E.2d 433, 441–42 (1st Dist.1986), *appeal denied*, 113 Ill.2d 573, 106 Ill.Dec. 46, 505 N.E.2d 352 (1987) (holding that the Illinois Consumer Fraud

Act does not form a statutory basis for survival of the award because it "does not explicitly authorize punitive damages"); *Poole v. Alpha Therapeutic Corp.*, 698 F.Supp. 1367, 1373 (N.D.Ill.1988) (holding that the Blood Labeling Liability Act and the Illinois Food, Drug and Cosmetic Act does not provide for survival of punitive damages because they do not "expressly authorize" them).

There is little reason to believe that the Illinois Supreme Court's holdings regarding the unavailability of punitive damages after the death of a person do not also apply to the dissolution of a corporation. *See Chicago Title*, 302 U.S. at 125, 58 S.Ct. at 127 ("[The corporation's] dissolution puts an end to its existence, the result of which may be likened to the death of a natural person"); *Oklahoma Nat. Gas Co. v. Oklahoma*, 273 U.S. 257, 259, 47 S.Ct. 391, 392, 71 L.Ed. 634 (1927) ("[A]s the death of the natural person abates all pending litigation to which such a person is a party, dissolution of a corporation at common law abates all litigation in which the corporation is appearing either as plaintiff or defendant"); *Mazzone*, 23 Ill.Dec. at 79, 383 N.E.2d at 950 ("[T]he dissolution of a corporation is analogous to the death of an individual.").

In *Grunloh v. Effingham Equity, Inc.*, 174 Ill.App.3d 508, 124 Ill.Dec. 140, 146–47, 528 N.E.2d 1031, 1037–38 (4th Dist.1988), *appeal denied*, 123 Ill.2d 557, 128 Ill.Dec. 890, 535 N.E.2d 401 (1988), the court applied the Illinois Supreme Court's analysis regarding the survival of punitive damages claims to the dissolution of a corporation. The court found that the corporation's claims for punitive damages were not part of a regulatory or statutory scheme and thus found that they would not survive at common law. *Id.* 124 Ill.Dec. at 147, 528 N.E.2d at 1038. The court concluded that because the punitive damages could not survive the dissolution of the corporation, they also were not assignable by the corporation. *Id.*

Here, too, it would appear that the Illinois Supreme Court's holdings in *Froud*, 74 Ill. Dec. at 634, 456 N.E.2d at 136, and *Mattyasovszky*, 330 N.E.2d at 510, dictate that Security's punitive damages claim does not survive the dissolution of that corporation under

Illinois law. Plaintiff has not cited to any statutory provision or regulatory scheme pursuant to *National Bank* which would allow the assignment of such a claim to RTC after Security's dissolution.

Instead, Plaintiff tries a different tack by arguing that Illinois law on this issue is preempted by federal law, namely, the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") which provides:

> The [Federal Deposit Insurance] Corporation shall, as conservator or receiver, and by operation of law, succeed to
>
> > (i) all rights, titles, powers and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution ...

12 U.S.C. § 1821(d)(2)(A)(i).

This exact provision was analyzed by the United States Supreme Court in *O'Melveny & Myers v. Federal Deposit Ins. Corp.*, —— U.S. ——, ——, 114 S.Ct. 2048, 2054, 129 L.Ed.2d 67 (1994). The Court held that FIRREA displaces state law with federal rules of decision only where there is "an explicit federal statutory provision," or in those "few and restricted" cases where there is a "significant conflict between some federal policy or interest and the use of state law." *Id.* at —— – ——, 114 S.Ct. at 2054–55. The Court then stated:

> Respondent argues § 1821(d)(2)(A)(i) should be read as a nonexclusive grant of rights to the FDIC receiver, which can be supplemented or modified by federal common law; and that FIRREA as a whole, by demonstrating the high federal interest in this area, confirms the courts' authority to promulgate such common law. This argument is demolished by those provisions of FIRREA which specifically create special federal rules of decision regarding claims by, and defenses against, the FDIC as receiver.... *Inclusio unius, exclusio alterius.* It is hard to avoid the conclusion that § 1821(d)(2)(A)(i) places the FDIC in the shoes of the insolvent S & L, to work out its claims under state law, except

where some provision in the extensive framework of FIRREA provides otherwise. To create additional "federal common-law" exceptions is not to supplement this scheme, but to alter it.

*Id.* at ——, 114 S.Ct. at 2054 (internal citations omitted).

Plaintiff relies upon *Resolution Trust Corp. v. Liebert,* 871 F.Supp. 370, 373 (C.D.Cal.1994), in which the district court found that FIRREA section § 1821(d)(2)(A)(i) did preempt California law regarding the transfer of punitive damages:

> Defendants contend that the RTC is prohibited from succeeding to the failed S & L's claim for punitive damages on the state law claims because of California's rule against transfer of punitive damage claims.... [T]he federal rule of decision supplanting California law is found in FIRREA. 12 U.S.C. § 1821(d)(2)(A)(i) is a federal statute under which the RTC succeeds to "all rights, title, powers, and privileges of the insured depository institution." There is no reason to read Westport's right to punitive damages out of this sweeping provision. California law created certain punitive damage rights Westport had at the time of receivership. Section 1821(d)(2)(A)(i) preempts California's rules regarding whether the RTC can succeed to those state-created rights.

(internal citations omitted).

However, the district court's decision in *Liebert* is distinguishable from the instant case. In *Liebert*, California law prevented the assignment of punitive damages even during the lifetime of the victim because they were deemed personal to the one injured. *See People v. Superior Court of Los Angeles County,* 9 Cal.3d 283, 107 Cal.Rptr. 192, 195, 507 P.2d 1400, 1403 (1973) *(en banc ).* Thus, when the bank went into receivership to RTC, it still had the state-created right to a punitive damages claim, albeit a nonassignable right under state law. The district court properly held that § 1821(d)(2)(A)(i) preempted California's rules regarding the assignment of such claims. 871 F.Supp. at 373.

By contrast, in the instant case, Illinois law prevents the assignment of a punitive damage claim after the dissolution of a corporation. *Froud,* 74 Ill.Dec. at 634, 456 N.E.2d at 136; *Mattyasovszky,* 330 N.E.2d at 510. Because Security and Security Federal were already defunct corporations when they went into receivership to RTC,[2] Illinois law no longer provided a state-created right to a punitive damages claim at that point in time. Thus, unlike the situation in *Liebert,* § 1821(d)(2)(A)(i) cannot be invoked to preempt state law where the state property interest did not even exist at the time of receivership. To invoke such an interest here under the federal common law would violate the holding in *O'Melveny.* RTC stepped into the shoes of a defunct corporation without any right to punitive damages. *O'Melveny,* —— U.S. at ——, 114 S.Ct. at 2054. Thus, the Court finds that Illinois law is not preempted by FIRREA and RTC's punitive damages claim must be dismissed under Illinois law.

## COUNT II

Defendant asserts a number of objections regarding Plaintiff's RICO claim[3] in Count II: (1) Plaintiff's allegations of mail fraud do not establish sufficient predicate acts to form a "pattern of racketeering activity" under RICO; (2) Plaintiff lacks standing under §§ 1962(a), (b), and (d) because it has not shown any injury caused by the RICO activity; (3) Plaintiff has not sufficiently alleged a violation of § 1962(c); and (4) Plaintiff has not sufficiently alleged a conspiracy under § 1962(d). The Court will analyze each of these arguments in turn.

### Pattern of Racketeering Activity

Defendant asserts that Plaintiff's allegations of mail fraud do not establish suffi-cient predicate acts to form a "pattern of racketeering activity" under RICO. In *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 236–43, 109 S.Ct. 2893, 2899, 106 L.Ed.2d 195 (1989), the Supreme Court held that in addition to showing at least two predicate acts, a plaintiff, to establish pattern, must show that the predicate acts are related[4] and continuous. "Continuity" is a concept which may be either closed- or open-ended, "referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241, 109 S.Ct. at 2902.

In the Court's previous Order of November 8, 1994, the Court focused upon the bank fraud allegations of Plaintiff's original Complaint and found that they did not sufficiently allege a pattern of closed-ended continuity. *Resolution Trust,* 868 F.Supp. at 1060. However, the Court noted that open-ended continuity may be found to exist if: (1) a specific threat of repetition exists; (2) the predicate acts are a regular way of conducting an ongoing legitimate business; or (3) the predicate acts can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes. *Id.* citing *Northwestern Bell,* 492 U.S. at 242–43, 109 S.Ct. at 2902. The Court held that the bank fraud scheme did establish open-ended continuity, reasoning:

> [T]he scheme in the present case had no natural ending point. Defendants were capable of repeating their alleged schemes indefinitely into the future. Indeed, but for the financial difficulties experienced by Security which resulted in it being placed in receivership, Defendants may well have

---

2. In making this conclusion, the Court relies upon Reiman's factual assertion on page five of his motion to dismiss that "SECURITY FEDERAL is a defunct financial organization that was formed by the Office of Thrift Supervision to receive certain assets of another defunct financial institution, SECURITY."

3. There are four different ways of violating RICO, all of which have been alleged in the First Amended Complaint. Violation of § 1962(a) requires the receipt of income from a pattern of racketeering activity and the use of that income in the operation of an enterprise. Violation of § 1962(b) requires that the defendant maintain an interest in or control of an enterprise through a pattern of racketeering activity. Violation of § 1962(c) requires conduct or participation in an enterprise through a pattern of racketeering activity. Violation of § 1962(d) requires participation in a conspiracy to violate sections (a), (b), or (c).

4. The existence of "relationship" between the predicate acts is not questioned in this case.

continued to repeat their alleged schemes when dealing with both Security and other lending institutions. In addition ... Defendants' continued control of and participation in the business threatened a continuation of the sort of criminal acts alleged in the Complaint. Finally, procuring financing for buyers of its automobiles is a regular way of conducting business for Defendants. Allegations of bank fraud to procure these loans would make the predicate offenses a regular way of conducting business.... Accordingly, Plaintiff has alleged facts necessary to establish a specific threat of repetition and that the predicates are a regular way of conducting Defendants' business. The Court finds that for the purposes of a motion to dismiss Plaintiff has sufficiently established open-ended continuity, and therefore, pattern.

*Id.* at 1061 (internal citations omitted).

The Court's task now is to determine whether replacing the bank fraud allegations of the original Complaint with the mail fraud allegations in the Amended Complaint changes the Court's analysis regarding open-ended continuity. It does not. Defendant argues that Plaintiff's failure to expressly allege facts in the Amended Complaint which support the threat of future harm indicates that open-ended continuity does not exist. Defendant points out that neither the original nor the Amended Complaint expressly alleges that bank fraud or wire fraud were a regular way of doing business, or that the alleged schemes would have continued into the future had Security not gone out of business.

■ However, a complaint need only contain direct or *inferential* allegations respecting all material elements necessary to sustain a recovery under some viable legal theory. *Sutliff,* 727 F.2d at 654. In addition, the Court must draw all reasonable inferences in favor of the plaintiff. *Baxter Healthcare,* 69 F.3d at 787. Here, the Amended Complaint sets forth sufficient factual allegations from which it may be inferred that mail fraud was a regular way of conducting business for

Defendants. Surely, an automobile dealership like S & K regularly mails motor vehicle insurance binders, certificates, and termination notices to its customers as well as motor vehicle titles and certificates of origin to the Illinois Secretary of State. It is also normal for the Secretary of State to send out new titles on these cars and for an insurance company to mail credit life insurance certificates.

Moreover, even though Security remained in operation until August 17, 1989—over one year after the last alleged incident of mail fraud [5]—this fact alone does not preclude the inference that Defendants' scheme might have continued into the future after this hiatus. In a motion to dismiss, the Court must draw all reasonable inferences in favor of the plaintiff. *Baxter Healthcare,* 69 F.3d at 787. Under this liberal pleading standard, the Court cannot say that Defendants' mail fraud scheme came to an absolute halt in May of 1988.

■ Lastly, Reiman argues that there are no specific factual allegations pursuant to Rule 9(b) which show that Defendants defrauded any financial institutions or engaged in mail fraud directed to any person aside from Security. It is true that the vaguely worded phrase, "Defendants devised a series of schemes to defraud Security and other financial institutions," is not enough to meet the specificity requirement of Rule 9(b). However, the "other financial institutions" language is not necessary to allege a RICO violation and thus cannot be dispositive of Count II. While the number of victims bears on the analysis of closed-ended continuity, *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir.1986), there appears to be no corresponding factor with regard to open-ended continuity. There must be two predicate acts under RICO, not two victims. Therefore, the Court finds that a pattern of racketeering activity has been adequately alleged here.

---

**5.** The Amended Complaint alleges that various incidents of mail fraud occurred between No-vember 1987 and May 1988.

## Standing

■ Reiman raises the issue of Plaintiff's standing to maintain a claim under 18 U.S.C. § 1962(a), (b) or (d).[6] First, Defendant argues that § 1962(a) requires Plaintiff to allege that it was injured by the use or investment of Defendants' racketeering income, rather than by the predicate acts themselves. The Seventh Circuit has yet to decide whether such an allegation is necessary to sustain an action under § 1962(a), *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 779 n. 6 (7th Cir.1994), and the district courts in the Circuit are split on the issue.

In *Sedima v. Imrex Co., Inc.*, 473 U.S. 479, 495, 105 S.Ct. 3275, 3284, 87 L.Ed.2d 346 (1985), which involved a violation of § 1962(c), the United States Supreme Court held:

[W]e perceive no distinct "racketeering injury" requirement. Given that "racketeering activity" consists of no more and no less than commission of a predicate act, § 1961(1), we are initially doubtful about a requirement of a "racketeering injury" separate from the harm from the predicate acts. A reading of the statute belies any such requirement. Section 1964(c) authorizes a private suit by "[a]ny person injured in his business or property by reason of a violation of § 1962." Section 1962 in turn makes it unlawful for "any person"— not just mobsters—to use money derived from a pattern of racketeering activity to invest in an enterprise, to acquire control of an enterprise through a pattern of racketeering activity, or to conduct an enterprise through a pattern of racketeering activity. §§ 1962(a)–(c). If the defendant engages in a pattern of racketeering activity in a manner forbidden by these provisions, and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under § 1964(c). There is no room in the statutory language

for an additional, amorphous "racketeering injury" requirement.

See also *American Nat'l Bank & Trust Co. of Chicago v. Haroco, Inc.*, 473 U.S. 606, 609, 105 S.Ct. 3291, 3292, 87 L.Ed.2d 437 (1985) ("The submission that the injury must flow not from the predicate acts themselves but from the fact that they were performed as part of the conduct of an enterprise suffers from the same defects as the amorphous and unfounded restrictions on the RICO private action we rejected in [*Sedima* ].").

■ The Fourth Circuit in *Busby v. Crown Supply, Inc.*, 896 F.2d 833, 839 (4th Cir.1990), relied upon *Sedima* and *Haroco* to reject the "investment use" rule in regard to claims arising under § 1962(a). That rule states that a cause of action under § 1962(a) may only be established where the alleged injury flows from the defendant's investment or use of the income, and not from the harm suffered by the commission of the predicate acts themselves. *Id.* at 836. The Fourth Circuit reasoned, "Although the complaints in *Sedima* and *Haroco* were filed under § 1962(c), it is clear that the Supreme Court was referring to § 1962 as a whole in both cases, and in fact cited § 1962(a) and the offense it defines in *Sedima.*" *Id.* at 839. Because the Supreme Court in *Sedima* and *Haroco* found that there was no requirement of a racketeering injury, the Fourth Circuit in *Busby* applied those holdings to negate the injury requirement under § 1962(a). *Id.*

However, all of the other circuit courts of appeals which have reached this issue have rejected the application of *Sedima* and *Haroco* to claims arising under § 1962(a) and have adopted the "investment use" rule instead. *See Nugget Hydroelectric, L.P. v. Pacific Gas and Elec. Co.*, 981 F.2d 429, 437 (9th Cir.1992), *cert. denied*, 508 U.S. 908, 113 S.Ct. 2336, 124 L.Ed.2d 247 (1993); *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 584 (5th Cir.1992); *Danielsen v. Burnside-Ott Aviation Training Center*,

---

**6.** Plaintiff asserts that *Reiman* does not have standing to raise this issue because the alleged § 1962(a) and (b) violations are not aimed at him. However, a § 1962(d) conspiracy claim is premised on the existence of a violation of §§ 1962(a), (b) or (c). *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1026 (7th Cir.1992).

Because the Amended Complaint alleges that Reiman violated § 1962(d), Reiman should be able to disprove the RICO violations asserted under § 1962(a) and (b) so as to discredit the basis for Plaintiff's conspiracy claim against him. Thus, Reiman has standing to challenge the alleged § 1962(a) and (b) violations as well.

*Inc.,* 941 F.2d 1220, 1230 (D.C.Cir.1991); *R.R. Brittingham v. Mobil Corp.,* 943 F.2d 297, 304 (3d Cir.1991); *Craighead v. E.F. Hutton & Co., Inc.,* 899 F.2d 485, 494 (6th Cir.1990); *Ouaknine v. MacFarlane,* 897 F.2d 75, 82–83 (2d Cir.1990); *Grider v. Texas Oil & Gas Corp.,* 868 F.2d 1147, 1150 (10th Cir.), *cert. denied,* 493 U.S. 820, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989).

These courts reason that the civil remedy created by § 1964(c) authorizes recovery only for injury "by reason of" the specific RICO violation at issue. *See Sedima,* 473 U.S. at 496, 105 S.Ct. at 3285 (holding that the injury required by § 1964(c) must be caused "by the conduct constituting the violation."). The broad language of § 1962(c) merely requires that a defendant "conduct or participate" in racketeering activity. Thus, a § 1962(c) violation may be found under § 1964(c) without alleging any specific injury, as the Supreme Court held in *Sedima* and *Haroco.* By contrast, the specific language of § 1962(a) requires that a defendant "use or invest ... any part of such income" in an enterprise. Thus, a violation of § 1962(a) plainly requires that a plaintiff prove that his injury flowed from the defendant's use or investment of racketeering income. Indeed, it would be illogical to hold that a predicate act injury is sufficient to provide a plaintiff with standing under both sections 1962(a) and 1962(c). If that were true, there would be no reason for Congress to have passed both provisions. *See Danielsen,* 941 F.2d at 1230; *Pinski v. Adelman,* 1995 WL 669101, at *8 (N.D.Ill. Nov. 7, 1995).

■ This Court agrees with the reasoning and weight of the majority of circuit courts of appeals and district courts in the Seventh Circuit which hold that a plaintiff must allege that he was injured by the defendant's use or investment of the racketeering income in order to state a claim under § 1962(a).[7] For the same reason, the Court finds that in order to state a claim under § 1962(b), a plaintiff must allege that he was injured by the defendant's acquisition or maintenance of an interest in the enterprise.

*See Danielsen,* 941 F.2d at 1231; *Old Time Enterprises v. International Coffee Corp.,* 862 F.2d 1213, 1219 (5th Cir.1989); *Fujisawa Pharmaceutical Co., Ltd. v. Kapoor,* 814 F.Supp. 720, 735 (N.D.Ill.1993). Moreover, where a conspiracy claim under § 1962(d) is premised upon a violation of § 1962(a) or (b) that has failed to allege a sufficient injury, that claim must also be dismissed for failure to state a claim. *See Craighead,* 899 F.2d at 495; *Grider,* 868 F.2d at 1151.

■ In the instant case, Plaintiff's Amended Complaint fails to allege an injury stemming from the use or investment of racketeering activity under § 1962(a) or arising from the acquisition or maintenance of an enterprise through racketeering activity pursuant to § 1962(b). Thus, the Court finds that Plaintiff lacks standing to bring a claim under § 1962(a), § 1962(b), and any § 1962(d) conspiracy allegations which are premised upon them.

### Failure to State a Claim Under § 1962(c)

Reiman asserts that Plaintiff's Complaint fails to state a claim against him under § 1962(c) because it does not establish that he participated in the conduct of the affairs of the enterprise. Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise, engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).

■ The United States Supreme Court in *Reves v. Ernst & Young,* 507 U.S. 170, 178–80, 113 S.Ct. 1163, 1170, 122 L.Ed.2d 525 (1993), held that § 1962(c) requires that the defendant play "some part in directing the enterprise's affairs." The Court adopted the "operation or management" test of the Eighth Circuit in order to apply this principle. Under this test, a RICO enterprise may be operated by: (1) upper management; (2) lower-rung participants in the enterprise who are under the direction of upper manage-

---

7. The Court notes that most of the district courts in the Seventh Circuit that have rejected the "investment use" rule did so before the various circuit courts of appeals had decided the issue to the contrary.

ment; or (3) others associated with the enterprise who exert control over it, as for example, by bribery. *Id.* at 184, 113 S.Ct. at 1173; *MCM Partners, Inc. v. Andrews–Bartlett & Assoc., Inc.*, 62 F.3d 967, 977 (7th Cir.1995) *citing Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521 (2d Cir.1994). In regard to the third category, the ·Court in *Reves* explained:

> § 1962(c) cannot be interpreted to reach complete "outsiders" because liability depends on showing that the defendants conducted or participated in the conduct of the "enterprise's affairs," not just their own affairs. Of course, "outsiders" may be liable under § 1962(c) if they are "associated with" an enterprise and participate in the conduct of its affairs—that is, participate in the operation or management of the enterprise itself.

507 U.S. at 185, 113 S.Ct. at 1173.

■ A person who is included in the complaint's definition of an enterprise is more likely to be found to exert some control over the enterprise.[8] *See, e.g., MCM*, 62 F.3d at 979 (holding that the "primary fact" leading to the conclusion that certain individuals were lower-rung participants in the enterprise, rather than outsiders, was that the complaint alleged them to be members of the enterprise itself); *Brown v. LaSalle Northwest Nat'l Bank*, 820 F.Supp. 1078, 1082 (N.D.Ill.1993) (holding that defendant named in complaint as part of enterprise satisfied the standard set forth in *Reves* ).

However, where the ·"person" is distinct from the alleged "enterprise" itself, the lower courts appear to be split about the level of participation required to exercise control over the enterprise's affairs. As the Third Circuit explained in *University of Maryland at Baltimore v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir.1993):

> Simply because one provides goods and services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result. There must be a nexus between the person and the conduct· in the affairs of an enterprise.

The operation or management test goes to that nexus. In other words, the person must knowingly engage in "directing the enterprise's affairs" through a pattern of racketeering activity. *Reves*, 508 U.S. at 178, 113 S.Ct. at 1170.

District courts in the Seventh Circuit have held that the participation requirement of *Reves* is not satisfied where the outsider merely supplies goods or services to the enterprise. *See, e.g., Arenson v. Whitehall ·Convalescent and Nursing Home, Inc.*, 880 F.Supp. 1202, 1209 (N.D.Ill.1995) ("Allegations of a simple supplier-purchaser relationship are insufficient to allege that Whitehall participated in the operation or management of Weber."); *A.I. Credit Corp. v. Hartford Computer Group, Inc.*, 847 F.Supp. 588, 601–02 (N.D.Ill.1994) (outside brokers who provided financial services for the enterprise did not exercise sufficient control over the enterprise); *Sassoon v. Altgelt 777, Inc.*, 822 F.Supp. 1303, 1307 (N.D.Ill.1993) (providing outside legal services to the enterprise is not sufficient to meet the *Reves* operation or management test).

The more difficult cases arise when the outsider does something more than merely provide goods or services to the enterprise. Thus, in *Davis v. Mutual Life Ins. Co. of New York*, 6 F.3d 367, 380 (6th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1298, 127 L.Ed.2d 650 (1994), a life insurance company (MONY) was found to have "continued to allow, if not actively encourage[d]" Fletcher, the head of the enterprise, to carry on with his scheme. The evidence at trial revealed a "virtual smoking gun: an internal report, prepared by a MONY attorney during negotiations between MONY and Fletcher, that described Fletcher's program in detail, calling it a 'fast-track hustle.' " *Id.* at 374. Although the report advised company officials that the scheme violated the law, the company appointed Fletcher as its insurance agent and sales manager. *Id.* at 374–75. In addition, the company's management personnel participated in training workshops for Fletcher's organization and recruited its own

---

8. Of course, the "person" cannot be equivalent to the "enterprise" itself or there will be no RICO cause of action at all. *See Richmond v.*

*Nationwide Cassel L.P.*, 52 F.3d 640, 646–47 (7th Cir.1995).

employees to work in the combined tax and insurance program. *Id.* at 375. The company also ignored warnings from numerous policyholders that Fletcher was conducting a "con game" or "scam." *Id.* For these reasons, the court concluded that MONY "exercised sufficient control over the affairs of the RICO enterprise to withstand scrutiny under *Reves.*"[9] *Id.* at 380.

Similarly, in *Aetna Casualty Surety Co. v. P & B Autobody*, 43 F.3d 1546, 1559 (1st Cir.1994), the plaintiff insurance company (Aetna) was the RICO "enterprise" and the defendants were individuals who had submitted fraudulent insurance claims to Aetna. The First Circuit found that the participation test in *Reves* had been met:

> Appraising allegedly damaged vehicles and investigating, processing, and paying automobile insurance claims are vital parts of Aetna's business. By acting with purpose to cause Aetna to make payments on false claims, appellants were participating in the "operation" of Aetna.... Appellants' activities caused Aetna employees having authority to do so to direct that other employees make payments Aetna otherwise would not have made.... The evidence was sufficient to support a finding that each of the appellants participated in the conduct of Aetna's affairs in this way.... [T]he evidence supports a finding that appellants caused the Aetna appraisers to approve false claims and conduct their appraisals in a manner contrary to Aetna's business practices and caused Aetna to pay out large sums of money on false claims. The evidence was sufficient to support a finding that appellants exerted control over the enterprise, if not by bribery (the example given by the Court in *Reves*), then at least by other methods of inducement.... [T]he appellants' actions could be found to have satisfied the "operation or management" test.

*Id.* at 1559–60.

In the instant case, the Court finds that Plaintiff's Complaint fails to adequately allege the participation of Reiman in the management or operation of the alleged enterprise, S & K Chevrolet. Reiman is not alleged to be a manager or employee of S & K; rather, he is an outside insurance agent who provided services to S & K during the course of its alleged scheme to defraud. The Complaint alleges that Reiman provided insurance binders in exchange for money from S & K even though he knew that the borrowers were highly unlikely to maintain their insurance premiums. Complaint pars. 19, 49, 50. As a result of Reiman's issuance of these binders, Plaintiff was induced to believe that the borrower would secure permanent coverage for the vehicle. However, Reiman would later cancel the binders without informing Plaintiff that they had been cancelled. Complaint at par. 49–50. Thus, Reiman played a crucial role in inducing Plaintiff to provide financing for the enterprise.

Plaintiff argues that Reiman's participation in the scheme is akin to that of the defendants in *Davis* and *Aetna* and thus should meet the operation or management test articulated in *Reves*. However, the Court believes that these cases are distinguishable. In *Davis*, the defendant insurance company was not only involved with the enterprise's scheme to defraud; it also had a relationship with Fletcher, the organizer of the enterprise, as well as the employees and agents of the enterprise, that affected the direction of the enterprise itself. Thus, the company ignored an internal report which advised it that the scheme was unlawful and instead appointed Fletcher as its own insurance agent and sales manager. 6 F.3d at 374–75. The company also sent its own management personnel to participate in training workshops for the enterprise and recruited the enterprise's employees to work in the combined tax and insurance program. *Id.* at 375. These circumstances are not present in the instant case. The Complaint does not allege that Reiman appointed the head of S & K as

---

9. In fact, this was only an alternative reason for finding that the requirements of *Reves* had been met in that case. The primary reason was that MONY clothed Fletcher with apparent authority. *Davis*, 6 F.3d at 375. Because it was clear that

Fletcher himself exercised control over the affairs of the enterprise, and Fletcher's acts could be attributed to MONY, the court found that MONY also exercised sufficient authority over the enterprise. *Id.* at 380.

its agent, nor did he participate in training workshops with S & K's employees.

Likewise, *Aetna* is distinguishable because in that case, the enterprise was the *victim* of the fraudulent scheme. 43 F.3d at 1559. The defendants' submissions of fraudulent claims "caused Aetna employees having authority to do so to direct that other employees make payments Aetna otherwise would not have made." *Id.* Because those false submissions actually caused the enterprise's employees to take some action, the participation requirement of *Reves* was met. *Id.* at 1560. By contrast, the enterprise here, S & K, was benefitted, not harmed, by Reiman's activities. Moreover, because the fraudulent insurance claims were submitted to third persons, there is no discernable connection between those activities and the actions of S & K's employees.

Plaintiff argues that Reiman's issuance of the insurance binders "materially affected the direction of the enterprise (S & K) by enabling and encouraging S & K employees and officers to carry out their fraudulent schemes." However, this connection is too tenuous to establish participation in the direction of the enterprise because it focuses solely on the attitude of S & K's employees and officers, not the actions of Reiman. Unlike the insurance company in *Davis*, which intermingled its agents and employees with those of the enterprise, the Amended Complaint alleges no actual connection between Reiman and S & K's employees. Moreover, S & K's employees were not directly forced into action by Reiman's activities, as was the enterprise in *Aetna*.

In the end, Reiman was merely providing services to the enterprise when he issued the insurance binders. This is not enough to meet the participation requirement under *Reves*. *Peat, Marwick*, 996 F.2d at 1539; *Arenson*, 880 F.Supp. at 1209; *A.I. Credit*, 847 F.Supp. at 601–02; *Sassoon*, 822 F.Supp. at 1307. Even if by providing such services, Reiman implicitly "encouraged" S & K and its employees to pursue the scheme, this is not enough to show that Reiman actively directed or controlled the enterprise itself.

Reiman's actions are too passive to have done so.

■ But what about Reiman's clear intent to participate in the scheme? This confuses the requirement under *Reves* that Reiman participate in *"directing the enterprise's affairs,"* 507 U.S. at 178, 113 S.Ct. at 1170 (emphasis added), with the idea that Reiman participated in the scheme itself.[10] Participation in the scheme is a necessary, but not sufficient, element of a § 1962(c) claim. To hold otherwise would stretch the meaning of *Reves* too far: *anyone* involved in a fraudulent scheme would be held to indirectly encourage members of the enterprise so as to "direct the enterprise's affairs." Thus, the Court holds that Plaintiff's Complaint fails to state a cause of action against Defendant Reiman under § 1962(c).

### Failure to State a Conspiracy Claim Under § 1962(d)

Finally, Reiman contends that Plaintiff has failed to adequately allege a conspiracy claim against him under § 1962(d). The Court has already held that Plaintiff lacks standing to pursue its claims under § 1962(a) or § 1962(b) and any conspiracy claims that may arise therefrom. However, Plaintiff still has a possible conspiracy claim premised upon a violation of § 1962(c).

The Seventh Circuit has held that § 1962(d) liability is not coterminous with liability under § 1962(c). *United States v. Quintanilla*, 2 F.3d 1469, 1485 (7th Cir.1993). Thus, the Supreme Court's decision in *Reves* regarding § 1962(c) claims does not affect this Court's analysis of Plaintiff's § 1962(d) claim premised upon Defendants' alleged conspiracy to violate § 1962(c). *See MCM*, 62 F.3d at 979 *citing Quintanilla*, 2 F.3d at 1484–85 ("A defendant may conspire to violate section 1962(c) even if that defendant could not be characterized as an operator or manager of a RICO enterprise under *Reves*.").

■ To allege a conspiracy to violate § 1962(c), Plaintiff must plead that: (1) each

**10.** The issue of Reiman's intent to participate in the RICO scheme itself is more appropriately discussed below under the RICO conspiracy charge.

defendant agreed to conduct the affairs of an enterprise; (2) each agreed to the commission of at least two predicate acts; and (3) each defendant knew that those predicate acts were part of a pattern of racketeering activity. *Schiffels v. Kemper Financial Servs., Inc.*, 978 F.2d 344, 352 (7th Cir.1992). Mere association with the enterprise is not enough. In a RICO conspiracy, as in all conspiracies, agreement is essential. *United States v. Neapolitan*, 791 F.2d 489, 499 (7th Cir.), *cert. denied*, 479 U.S. 940, 107 S.Ct. 422, 93 L.Ed.2d 372 (1986).

■■■■ Conclusory allegations of conspiracy are not sufficient to state a claim under § 1962(d); rather, Plaintiff must allege facts from which one can infer each defendant's agreement to violate § 1962(c). *Id.; see also Midwest Grinding Co., Inc. v. Spitz*, 716 F.Supp. 1087, 1093 (N.D.Ill.1989), *aff'd*, 976 F.2d 1016 (7th Cir.1992) ("A complaint which merely implies that a defendant is responsible for someone else's fraudulent acts is insufficient to satisfy section 1962(d)."). A conspiracy claim must contain supportive factual allegations sufficient to describe the conspiracy's general composition, its objectives, and the defendant's general role in the conspiracy. *Schiffels*, 978 F.2d at 352 *citing Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir.1989).

■■■■ The Court finds that these pleading requirements have been met here. Paragraphs 49 and 50 of Plaintiff's Amended Complaint allege a scheme by which Reiman would issue temporary insurance binders that would later be cancelled after S & K received financing from Plaintiff. While the Complaint does not mention the words "agree" or "agreement," it does allege that both Reiman and the other conspirators *knew* that the binders would eventually be cancelled because many of the borrowers were uninsurable. This is enough to infer that all of the conspirators implicitly agreed to carry out this scheme on behalf of the enterprise.

■■■ Moreover, paragraphs 73 through 75 of the Amended Complaint allege that Reiman himself carried out at least two predicate acts of mail fraud. Because S & K employed Reiman as its insurance agent for the purpose of issuing these bogus binders, the Court makes the reasonable inference that there was an agreement among all Defendants that Reiman's acts of mail fraud were made in furtherance of the enterprise's scheme to defraud. And since *Reves* does not apply to § 1962(d) claims, *MCM,* 62 F.3d at 979; *Quintanilla,* 2 F.3d at 1485, the Court finds that Reiman agreed to conduct the affairs of the enterprise by agreeing to play a integral role in the alleged scheme to defraud Plaintiff. Thus, the Court denies Reiman's motion to dismiss the conspiracy claim against him.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant Randy Reiman's Objections to the Magistrate's Report and Recommendation [Doc. # 139] are **GRANTED in part** and **DENIED in part.** Accordingly, the Magistrate Judge's Report and Recommendation is **ADOPTED in part** and **REJECTED in part.**

IT IS FURTHER ORDERED that Defendant Randy Reiman's Motion to Dismiss First Amended Complaint [Doc. # 106] is **GRANTED in part** and **DENIED in part.** The motion to dismiss is granted only as to Plaintiff's punitive damages claim in Count I and Plaintiff's RICO claims under §§ 1962(a), (b) and (c) in Count II. Plaintiff's punitive damages claim in Count I and the §§ 1962(a) and (b) RICO claims in Count II shall be **DISMISSED with prejudice** as to *all* Defendants. The § 1962(c) claim shall be **DISMISSED with prejudice** as to Defendant Reiman only.[11] This matter is referred to Magistrate Judge Kauffman for further proceedings.

---

11. To clarify: the common law fraud claim in Count I remains viable against all named Defendants, but without a punitive damages component. The § 1962(c) claim in Count II remains viable against all named Defendants except Reiman. The § 1962(d) claim in Count II remains viable against all named Defendants including Reiman.